# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**THOMAS W. KOEPPEN,**

                   **Petitioner,**

        v.                                                      Case No. 02-C-510

**WARDEN JUDY P. SMITH,**

                   **Respondent.**

## ORDER DENYING PETITION FOR HABEAS CORPUS

Petitioner Thomas W. Koeppen ("Koeppen") is a prisoner incarcerated pursuant to a Wisconsin state court judgment. He was convicted following a jury trial in Waukesha County Circuit Court of one count of bail jumping, in violation of Wisconsin Statute section 946.46(1)(B). On February 21, 2002, Koeppen filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254. On February 8, 2005, this court screened Koeppen's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. The parties have consented to the full jurisdiction of a magistrate judge. On March 9, 2005 the respondent answered the petition.

Koeppen asserts six grounds for relief in his petition: (1) the undertaking in his case did not support a conviction for bail jumping, pursuant to Wisconsin Statute § 946.49; (2) the trial court erroneously permitted the evidence regarding his alleged violation of bond conditions; (3) there was confusion regarding the conditions of Koeppen's bond, such that the right to due process was violated; (4) the admission of "other acts" evidence violated the right to a fair trial; (5) there was

insufficient evidence to support the finding that Koeppen violated the terms of his bond; and (6) Koeppen's right to a speedy trial was violated.

The respondent answers this petition by arguing that the state court decisions rejecting these claims were not clearly contrary to, or unreasonable applications of, federal law as established by the United States Supreme Court. Each of the petitioner's contentions shall be addressed in turn.

## STANDARDS OF REVIEW

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and

applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under section 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, --- U.S. ---, 126 S.Ct. 969, 974 (2006) (citing Miller-El v. Dretke, 545 U.S. ----, ----, 125 S.Ct. 2317, 2325 (2005)).

And finally, if the petitioner demonstrates constitutional error under section 2254(d), he still may not be entitled to habeas relief where such error is deemed harmless; that is, the error could not have had a substantial and injurious effect or influence on the jury's verdict. O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (internal citations omitted).

With the § 2254(d) and (e)(1) standards in mind, the court will now turn to the three challenges raised by Koeppen.

**BOND ISSUES**

In his petition, Koeppen raises three related due process issues regarding his bond. First, Koeppen argues that "[t]he conviction for Bail Jumping was based on an undertaking that does not provide for a crime or conviction under 946.49 WI Stat." Second, Koeppen argues that "[t]he variance between elements of conditions of the written bond and the court's oral pronouncements violated Defendants right to due process of law and adequate notice." Finally, Koeppen argues that "[t]here was insufficient evidence to find the defendant had violated his conjunctively-worded bond condition or that the bond was intentionally violated as to its terms." Koeppen's third argument is relevant only if the state was, in fact, required to prove all the conditions of the conjunctively worded bond.

> The following relevant facts were set forth in the Court of Appeals decision:
>
> In January 1997, Koeppen was charged with refusing to comply with an officer's attempt to take him into custody, obstruction of an officer, bail jumping and disorderly conduct. At his initial appearance, bail was set at $5,000 cash and Koeppen was ordered not to consume intoxicants and not to have contact with his estranged wife, Geri Koeppen, or her residence on Franklin Drive in New Berlin. On April 1, 1997, an amended bail bond was entered stating that Koeppen shall not "consume alcoholic beverages or illegal drugs," "have violent contact with residence on Franklin Dr.," and "no contact with [G]eri Koeppen." On April 18, 1997, the State moved to clarify the bail conditions because Koeppen informed Geri that the condition that he have no "violent contact" with the residence meant that he could go into the house but could not ruin the house. The court modified the bail conditions and summarized the conditions of release:
>> Conditions of release are the standard conditions respecting no law violations, be in court when you are supposed to be. He's not to consume any alcoholic beverages anywhere for any reason nor is he to be upon the premises of any store, bar, tavern, anyplace that sells or serves alcoholic beverages. Additionally, he is to have no contact physically nor is he to attempt to contact by any other means the residence at ... Franklin Drive in the City of New Berlin. He's not to be upon those premises for any reasons whatsoever. Additionally, he's to have no contact directly, indirectly, through any third person, or other recognized telecommunication means whatsoever with Geri Koeppen.
>>
>> Koeppen was required to sign a new bail bond that same day. The written
> amended bail bond provided that Koeppen shall not "have contact with ... Franklin Dr. and Geri Koeppen and no contact through a 3rd party with

> Geri Koeppen directly or indirectly" and "not be on premises that sell alcohol or serve alcohol."
> On April 27, 1997, Koeppen went to the Franklin Drive residence in an intoxicated state. Geri was present at the residence and called the police.

State v. Koeppen, No. 00-1777-CR at ¶¶ 2-4 (Wis. Ct. App. filed June 6, 2001). Based upon this conduct, Koeppen was tried and convicted of bail jumping.

Koeppen's defense at trial was that the state was required to prove that he violated all three conditions of his release. His defense was based upon the fact that the conditions of his release were written in the conjunctive. He argues that the evidence was insufficient to prove that he violated these three conditions and therefore his conviction cannot stand.

The court of appeals rejected Koeppen's argument that the evidence was insufficient to support his conviction. The court held that the evidence was sufficient if the jury could conclude that Koeppen knew what his bond conditions were and that he intentionally failed to comply with those conditions. Koeppen, ¶ 7. Koeppen's understanding of the conditions of his bond was a question of fact for the jury and the jury reasonably rejected Koeppen's contention that he did not understand that he was not permitted to go to the residence on Franklin Drive.

Koeppen also argued that because he was released from custody on the original bond and therefore the amended bond could not form the basis for his conviction. The court of appeals called this argument "absurd." Koeppen, ¶ 9.

The court further rejected Koeppen's argument that the trial court's oral pronouncement of the conditions of his bond did not constitute terms of the bond and therefore could not form the basis of a bail jumping charge. The court points out that the written bond requires a defendant to comply with the "orders and process of the court" and therefore the original bond expressly incorporated the oral pronouncement. Koeppen, ¶ 10. Finally, the court rejected Koeppen's due process arguments on the basis that there was no conflict between the oral pronouncement and a reasonable reading of the written terms of release. Koeppen, ¶ 11.

5

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 U.S. 358, 364 (1970). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 318.

Wisconsin Statute § 946.49 defines bail jumping as the intentional failure to comply with the conditions of bond by a person who was released from custody under Chapter 969 of the Wisconsin Statutes. The Wisconsin Court of Appeals has held that a defendant may be convicted of bail jumping only if the state is able to prove beyond a reasonable doubt the following three elements:

> first, that the defendant was either arrested for, or charged with, a felony or misdemeanor; second, that the defendant was released from custody on a bond, under conditions established by the trial court; and third, that the defendant intentionally failed to comply with the terms of his or her bond, that is, that the defendant knew of the terms of the bond and knew that his or her actions did not comply with those terms.

State v. Dawson, 536 N.W.2d 119, 120, 195 Wis. 2d 161, 165 (Ct. App. 1995).

In the present case, it appears undisputed that there is no evidence that Koeppen had contact with his ex-wife through a third party. Thus, his conviction is based upon the fact that he was prohibited from doing any one of the acts that were stated conjunctively in his written bond. Therefore, his conviction cannot stand if Koeppen had not received adequate notice that this single act of going to his ex-wife's house would violate the conditions of his bond.

When a prohibition does not impinge upon First Amendment freedoms, the challenged restriction must be reviewed based upon the individual facts of the case presented. Maynard v.

6

Cartwright, 486 U.S. 356, 361 (1988); United States v. Powell, 423 U.S. 87, 92 (1975); United States v. Mazurie, 419 U.S. 544 (1975); United States v. National Dairy Products Corp., 372 U.S. 29, 32-33 (1963). Koeppen does not allege that the bond conditions infringed upon any First Amendment freedom and therefore the conditions must be analyzed as applied to Koeppen.

The evidence strongly supports the conclusion that Koeppen was sufficiently informed that he was prohibited from going to the Franklin Drive residence. First, Koeppen was notified of this prohibition by the written terms of his bond. The written bond is sufficiently clear in its prohibiting Koeppen from going to the Franklin Drive residence. It appears that Koeppen simply created misunderstanding by interpreting literally a grammatical error in order to reach an unreasonable conclusion.

In addition to the bond being written with appropriate clarity to permit Koeppen to understand what conduct was prohibited, the court specifically informed Koeppen orally that he was prohibited from going to the Franklin Drive residence. The judge clearly advised Koeppen that he was not to enter the premises for any reason whatsoever. Either the oral setting of the terms of his bond, or the written memorialization, would have been sufficient by itself to appropriately inform a defendant of the conditions of his release. When taken together, there is no doubt that Koeppen received notice that his conduct was prohibited.

Applying largely the same reasoning detailed above but relying upon Wisconsin case law, the Wisconsin Court of Appeals rejected Koeppen's. Koeppen, ¶ 11 (citing City of Milwaukee v. K.F., 145 Wis. 2d 24, 33, 426 N.W.2d 329 (1988)). The standards set forth in the Wisconsin case law relied upon by the court of appeals largely mirror federal standards, see K.F., at 32-33, 426 N.W.2d at 333-34, and therefore this court cannot conclude that the court of appeals' conclusion was clearly contrary to or an unreasonable application of federal law. Rather, this court agrees with

the determination of the Wisconsin Court of Appeals that "Koeppen's claims are based on a construction of the conditions of the bond that is unreasonable and absurd." Kopepen, ¶ 1.

## ADMISSION OF EVIDENCE

Koeppen argues that the trial court's admission of certain testimony was impermissible as legal opinion. A court clerk and police officer testified as to how they understood the bond and a letter written by the assistant district attorney in which he explained to Koeppen's ex-wife the conditions of Koeppen's bond, was admitted as evidence. Koeppen additionally alleges that the admission of the letter from the district attorney violated his Sixth Amendment right of confrontation.

The respondent argues that the Wisconsin Court of Appeals' holding that even if the admission of such evidence was improper, such error was harmless, is not clearly contrary to or an unreasonable application of federal law.

The court of appeals provided the following summary of this evidence:

> The trial court's deputy clerk testified about the bond modification hearing held on April 18, 1997. She explained what a bail bond is, what notation she made in her minutes of the proceeding, and how the conditions of the bail bond would be written out by another person based on the minutes sheet. She expressed that her intent in writing the minutes sheet and her understanding of the court's order was that a violation of one condition was a violation of the bond. City of New Berlin police officer Rhonda Eisold testified to her understanding of the offense of bail jumping. She relayed that from a roll call briefing she understood Koeppen's conditions of release to be to refrain from using alcohol, to refrain from going to the Franklin Drive residence, and to avoid contact with Geri. A letter dated April 21, 1997, from the prosecutor to Geri was also admitted at trial. In explaining the conditions of Koeppen's bond, the letter indicated that violation of any one condition could result in forfeiture of bail. Koeppen characterizes all this evidence as parol evidence on an unambiguous contract.

Koeppen, ¶ 18 (footnote omitted). The trial court concluded that all this evidence was factual evidence as to each individual's understanding of the bond conditions and did not cross the line into legal opinion testimony. The court of appeals concluded that even if it were to accept Koeppen's

8

argument that the evidence was impermissible legal opinion, the error was harmless because the jury did not need to rely on any legal interpretation of the bond conditions and thus there was no reasonable possibility that the legal opinions contributed to the conviction. Koeppen, ¶¶ 19-20.

"[E]videntiary rulings of state trial courts are normally not subject to habeas review." Dressler v. McCaughtry, 238 F.3d 908, 914 (7th Cir. 2001). "In order to claim a right to relief, a petitioner must establish that the incorrect evidentiary ruling was so prejudicial that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted." Id.; see also, Perruquet v. Briley, 390 F.3d 505, 510 (7th Cir. 2004) ("[A] state trial court's decision not to admit evidence . . . generally do[es] not implicate federal constitutional rights.").

Ordinarily, when a defendant has demonstrated a constitutional error at his criminal trial, it is the burden of the prosecution to demonstrate that the error was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18 (1967). However, in the context of a federal habeas proceeding challenging a state court conviction, the standard is slightly different. A federal court must determine that the error had a "substantial and injurious effect or influence in determining the jury's verdict," Aleman v. Sternes, 320 F.3d 687, 690 (7th Cir. 2003) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). Assuming that the evidence did violate a constitutional right of the defendant, this court cannot say that its impact upon the jury's verdict was substantial. Without this evidence, it appears that the jury would have likely nonetheless convicted Koeppen. The most important pieces of evidence regarding the conditions of Koeppen's bond were the facts that Koeppen's conjunctive reading was objectively unreasonable and the fact that the court orally explained to Koeppen that the bond prohibited Koeppen from doing any of the denoted acts. The significance of the evidence Koeppen complains of, if any, was minimal, and therefore Koeppen's argument must fail.

9

## RIGHT TO CONFRONTATION

In his brief, Koeppen argues that the admission of the letter from the assistant district attorney violated his Sixth Amendment right to confrontation. The respondent argues that the court should deny Koeppen's claim for a variety of reasons including that Koeppen failed to raise it in his petition, that the claim is procedurally defaulted by his failure to raise it in state court, that it was not hearsay, and because the most-relevant Supreme Court precedent is not retroactively applicable. Koeppen replies by arguing that any procedural default should be overlooked because a fundamental miscarriage of justice would result and the letter was hearsay dealing with the central issue of the trial.

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). Koeppen has not presented his confrontation claim to the state courts and therefore this court is precluded from considering it. Koeppen merely points out that procedural default may be excused if a fundamental miscarriage of justice would occur if the court were not to consider the claim. Koeppen does not elaborate so as to explain how such a miscarriage would occur in this case other than to say that the error was not harmless. Given a federal court's limited role in reviewing state court convictions and the interests of comity that underlie modern federal habeas corpus law, this court must permit the state courts the first opportunity to review alleged errors in its convictions. Therefore, Koeppen's argument must be rejected as procedurally defaulted.

## ADMISSION OF OTHER ACTS EVIDENCE

Koeppen alleges that his due process right to a fair trial was violated by the admission of certain other acts evidence. Specifically, Koeppen alleges that the trial court should not have admitted evidence of his alcohol consumption, evidence of his past bail jumping incidents, evidence that he broke property, evidence that he intentionally let his a cat out of the residence, evidence that the SWAT team had to be called because he was intoxicated and armed with a tire iron, and evidence that he was agitated and resisted arrest.

The respondent argues that much of the evidence that Koeppen objects to is not other acts evidence but was merely the evidence that provided the circumstances for his arrest and was entirely relevant as background information. Additionally, the respondent argues that the evidence did not deprive Koeppen of a right to a fair trial and otherwise does not entitle Koeppen to habeas relief because the alleged error in the admission of certain evidence was not so prejudicial so as to create the likelihood that an innocent person was convicted.

The court of appeals held that the complained of evidence was not other acts evidence but rather was inextricably intertwined with the crime because it was necessary to explain the full context of the crime. Koeppen, ¶ 13.

As noted above, "evidentiary rulings of state trial courts are normally not subject to habeas review." Dressler, 238 F.3d at 914. "In order to claim a right to relief, a petitioner must establish that the incorrect evidentiary ruling was so prejudicial that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted." Id.

This court cannot say that the admission of the evidence denied Koeppen a fair trial. Given that the jury was instructed to consider this evidence only to determine Koeppen's intent and not to infer that he was guilty of the present offense because he had engaged in similar conduct before,

this court must assume that the jury followed this instruction. See Weeks v. Angelone, 528 U.S. 225, 234 (2000). Therefore, Koeppen's claim must fail.

## SPEEDY TRIAL

The prosecution of Koeppen commenced on April 28, 1997 with the filing of a criminal complaint. However, the trial did not commence until March 9, 1999. On October 13, 1997, Koeppen waived his right to a speedy trial, but on July 29, 1997, November 3, 1997, January 29, 1998, March 2, 1998, March 26, 1998, and May 28, 1998, Koeppen demanded a speedy trial. Koeppen argues that this delay violated his constitutional right to a speedy trial.

Respondent argues that the court of appeals reasonably applied the rule set forth in Barker v. Wingo, 407 U.S. 514 (1972), in concluding that the defendant's constitutional right to a speedy trial had not been violated.

The Supreme Court has said, "the right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial." Barker, 407 U.S. at 521 (footnote omitted). The Supreme Court has set forth a four factor balancing test for courts to apply when assessing whether the defendant was denied his constitutional right to a speedy trial. These factors include: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530. The respondent concedes that the two-year delay in Koeppen's being charged and brought to trial creates the presumption of prejudice and further concedes that Koeppen asserted his right to a speedy trial. However, the respondent argues that the delay was largely Koeppen's fault. The following timeline as set forth in the court of appeals' decision illustrates the respondent's position:

When the speedy trial demand was made on July 29, 1997, Koeppen's attorney moved to withdraw because of a breakdown in the relationship and threats by Koeppen to file a professional responsibility complaint against the attorney. On August 15, 1997, the court sought to appoint an attorney for Koeppen, but the attorney indicated that because of a prior commitment he could only accept the assignment if the September 2, 1997 trial was adjourned. Koeppen agreed to reset the trial to October 21, 1997. On October 13, 1997, Koeppen changed his plea to one of not guilty by reason of mental disease or defect (NGI) and asked that the trial be adjourned so a doctor could examine him. The court-appointed attorney was permitted to withdraw at the end of October. Koeppen proceeded pro se and made a November 3, 1997 demand for a speedy trial. At a December 1997 hearing, Koeppen indicated his desire to have counsel and the court explained the difficulty it had in finding counsel given his past conduct. On January 15, 1998, Koeppen appeared with new counsel and withdrew his NGI plea. Trial was held on Koeppen's other criminal case on January 20 and 21, 1997. Trial of this matter was set for February 18, 1998. However, it was later discovered that that trial date conflicted with the trial of another case against Koeppen in a different court. Trial was adjourned to March 17, 1998. Koeppen's fourth attorney was permitted to withdraw on February 27, 1998. On March 2, 1998, Koeppen again asserted a desire to have legal representation. He retained an attorney who was not available for trial on March 17, 1998. Counsel requested a June date to allow him to prepare. Trial was set for June 2, 1998. On May 28, 1998, Koeppen indicated a desire to obtain a transcript of a prior hearing where the court had ruled on the admissibility of "other acts" evidence. When faced with the choice of either proceeding to trial or adjourning to obtain the transcript, Koeppen chose to adjourn the trial, although he indicated that he was not waiving his speedy trial right. Trial was then set for September 1, 1998. At the status conference just before trial, Koeppen again sought the preparation of additional hearing transcripts and an adjournment. December 8, 1998 was the new trial date selected at that conference. At the status conference just before the December trial, Koeppen was not produced from prison due to oversight. The trial court offered to expedite Koeppen's production so that the trial date the following Tuesday could be preserved. Counsel indicated that because of Koeppen's direct involvement in his own defense, there was not sufficient time to still review matters with Koeppen and still argue the motions. The matter was adjourned to March 2, 1999.

Koeppen, ¶ 23.

The court of appeals rejected Koeppen's claim by saying:

As noted by the trial court, Koeppen's demand for a speedy trial was a "myriad of inconsistencies." The delays were created by Koeppen's change of attorneys and the loss of continuity. These are reasons to be heavily weighed against Koeppen. Moreover, it is clear from the above timeline that the reason for delay was not motivated by an attempt to hamper the defense or any cavalier disregard of the right to a speedy trial. Once Koeppen settled on his fifth attorney, some

13

delay was the result of a crowded court calendar. This is a neutral reason and is weighted less heavily. The balance achieved in weighing the reasons for delay does not favor Koeppen.

Koeppen, ¶ 24 (internal citation omitted).

Finally, the court of appeals concluded that Koeppen could not show prejudice in the delay because Koeppen was incarcerated on other charges and, in fact, delay likely benefited Koeppen by permitting him to obtain counsel of his choice and to better prepare and defend his case. Id. ¶ 25.

This court cannot conclude that the court of appeals was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The facts strongly indicate that the delay in Koeppen's trial was largely the product of his own actions. Therefore, Koeppen's argument must fail.

**IT IS THEREFORE ORDERED** that Koeppen's petition for a writ of habeas corpus is **denied** and this case is **dismissed** on its merits.

Dated at Milwaukee, Wisconsin, this 28th day of August, 2006.

s/AARON E. GOODSTEIN
United States Magistrate Judge